Robert J. McKennon (SBN 123176) *rm@mckennonlawgroup.com*
Andrea Soliz (SBN 243302) *as@mckennonlawgroup.com*
**McKENNON LAW GROUP PC**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Phone: 949-387-9595 | Fax: 949-385-5165

Attorneys for Plaintiff Hamid Zehtab

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| HAMID ZEHTAB,<br><br>          Plaintiff,<br><br>vs.<br><br>UNUM GROUP, a Delaware corporation; PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, a Tennessee corporation; and DOES 1 to 10, inclusive,<br><br>          Defendants. | Case No.:<br><br>Action Filed:<br><br>Trial Date:<br><br>**COMPLAINT FOR BREACH OF INSURANCE CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**REQUEST FOR JURY TRIAL**<br><br>[Filed Concurrently With:<br>  -  Civil Cover Sheet;<br>  -  Summons; and<br>  -  Certification of Interested Parties] |



### INTRODUCTION

1.      This lawsuit is necessary because, when presented with a long-term-disability ("LTD") and Overhead Expense claim by Plaintiff Hamid R. Zehtab ("Dr. Zehtab") — a dentist who reported that severe pain from multiple medical conditions, including degenerative disc disease, facet joint syndrome, arthritis, bilateral wrist tenosynovitis, arm pain and numbness in his fingers, prevented him from performing the substantial duties of his occupation — Defendants Unum Group and Provident Life and Accident Insurance Company (collectively referred to as "Unum") improperly delayed a decision on Dr. Zehtab's claims and then, after many months of stalling and repeated requests for documents, denied his claims based on a biased, self-serving examination of Dr. Zehtab's medical records.  The denial decision was improper and in bad faith for multiple reasons.  First, Unum failed to examine Dr. Zehtab in person, instead relying on cursory "paper reviews" of his medical records.  Second, Unum wrongly determined that the information contained in Dr. Zehtab's medical file did not support restrictions and limitations. Finally, the claim investigation and denial decision were arbitrary and capricious and ignored pertinent medical evidence that supported Dr. Zehtab's disability status. These and other acts alleged below are evidence that Unum acted in bad faith to deprive Dr. Zehtab of the LTD and Overhead Expense benefits he needs to financially survive.

### THE PARTIES

2.      Dr. Zehtab is an individual who, at all times relevant was, and is, a resident of Orange County, California and a citizen of the State of California.



3.      Defendant Unum Group is, and at all times relevant was, a Delaware corporation with its principal place of business in Tennessee.  Unum Group is, and at all times relevant was, an insurance company validly licensed to conduct business within the State of California and doing business in Orange County, California.

4.      Defendant Provident Life and Accident Insurance Company ("Provident") is, and at all times relevant was, a Tennessee corporation with its principal place of business in Tennessee and is a wholly owned subsidiary of Unum Group.

5.      Defendants Does 1 through 10, inclusive, are sued by fictitious names because their true names and capacities, whether individual, corporate, associate or otherwise, and/or their responsibility and culpability for the acts alleged herein are unknown to Dr. Zehtab at this time.  Dr. Zehtab is informed and believes, and on that basis alleges, that each defendant sued herein as "Doe" is responsible in some manner for the acts and events referred to herein.  When their true names, capacities, responsibility and culpability are ascertained, Dr. Zehtab will seek leave of this Court to amend the complaint as appropriate.

6.      Dr. Zehtab is informed and believes, and on that basis alleges, that at all times mentioned herein, each of the fictitiously named defendants was the agent, representative, co-conspirator, successor-in-interest, assignee or employee of each remaining defendant, and in doing the things alleged herein was acting within the course and scope of such agency, representation, conspiracy, assignment and employment.

Case No.:



**JURISDICTION AND VENUE**

7.     This Court has jurisdiction pursuant to 28 U.S.C. Section 1332 because Dr. Zehtab and Unum are citizens of different states (California on one hand and Delaware and Tennessee on the other) and the amount in controversy exceeds $75,000.

8.     Venue is proper in this Court because Unum's liability to Dr. Zehtab arose in Orange County, California and Dr. Zehtab resides there.  In addition, Unum conducted extensive business in California, including Orange County, during the relevant times.

**GENERAL FACTS/ALLEGATIONS**

9.     Dr. Zehtab first began working as a dentist in 1993.  In 1997, he opened his own dental practice, Zehtab Dental, in Oregon, performing heavy dentistry.  As part of his practice, he performed the full array of dental procedures, including implants, extensive reconstruction, complicated root canals, Invisalign treatments, full-mouth extractions and crowns.  He worked Monday through Friday, typically 60 hours per week.  His job entailed frequent twisting and angling of his neck and back to perform dental procedures on patients, and constant movement of his hands, arms and wrists to manipulate dental equipment.  Beginning in December 2015, due to increasing wrist, arm, back and neck pain and numbness in his fingers, Dr. Zehtab could no longer perform all of the substantial and material duties of his occupation. He started substantially reducing his work hours because he was unable to perform many of the dental procedures that he had previously performed.  Eventually, his pain became so severe that he could no longer operate his business and he was forced to sell his dental practice.  He sold the practice in July 2016.  Due to financial

Case No.:



1   hardship, Dr. Zehtab was forced to find part-time work, working 3-4 days per week

2   as an associate dentist performing light dentistry.  He gradually reduced his work

3   schedule to only 2 days per week as an associate dentist performing light dentistry.

4   During his part-time work, he was unable to perform numerous dental procedures

5   that he previously performed.  In July 2019, because of his disability status, Dr.

6   Zehtab ceased working in light dentistry.  In September 2019, again due to his

7   financial difficulties, he began working two days per week in a dental office

8   performing mainly managerial duties and performing occasional dental exams.

9

10          10.    Dr. Zehtab is, and at all times relevant was, insured under LTD

11   individual insurance policy nos. 06-338-0005106716, 06-600-5386766, 66-338-

12   5670361 and individual Overhead Expense policy no. 06-1737-5670482 (the

13   "Policies") issued to Dr. Zehtab by Provident/Unum.

14

15          11.    Pursuant to the terms and conditions of the Policies, Dr. Zehtab is

16   entitled to LTD and Overhead Expense benefits because, at all times relevant, he

17   met, and continues to meet, the Policies' operative "Definition of Total Disability" [1]

18   and the other conditions necessary to qualify for benefits.  The Overhead Expense

19   policy states:

20

21          Total Disability or totally disabled means that due to Injuries or Sickness, you
22          are not able to perform the substantial and material duties of your occupation

23   [1] Under California law, "total disability" means that the insured must be "unable to
     perform the substantial and material acts necessary to the prosecution of a business
24   or occupation in the usual or customary way" and with reasonable continuity.  *See
     Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1006 (9th Cir. 2004).
25   "Recovery is not precluded . . . because the insured is able to perform sporadic
     tasks, or give attention to simple or inconsequential details incident to the conduct of
26   business . . . ."  *Id.*; *Erreca v. Western States Life Ins. Co.*, 19 Cal.2d 388, 396
     (1942); *see also Hecht v. Paul Revere Life Ins. Co.*, 168 Cal.App.4th 30, 32-33
27   (2008).  Regardless of the definition of "total disability" in an own-occupation
     insurance policy, "California law requires courts to deviate from the explicit policy
28   definition of 'total disability' in the occupational policy context."  *Hangarter*, 373
     F.3d at 1006.

Case No.:



and you are receiving care by a Physician which is appropriate for the condition causing disability.  We will waive this requirement when continued care would be of no benefit to you.

"Your Occupation" means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.

LTD policies 06-338-0005106716 and 66-338-5670361 state:

Total Disability or totally disabled means that due to Injuries or Sickness, you are not able to perform the substantial and material duties of Your Occupation.  To be considered totally disabled, you must be receiving care by a Physician which is appropriate for the condition causing disability.  We will waive this requirement when continued care would be of no benefit to you.

"Your Occupation" means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.  If your occupation is limited to a board certified specialty, we will deem your specialty Your Occupation.

LTD policy no. 06-600-5386766 states:

Total Disability or totally disabled means that because of Injuries or Sickness:

1. You are unable to perform the material and substantial duties of Your Occupation; and
2. You are not engaged in any other occupation; and
3. You are receiving Physician's care.  We will waive this requirement if we receive written proof acceptable to us that further Physician's care would be of no benefit to you.

After the end of the Your Occupation Period, then Total Disability also means:

4. You are unable to perform the material and substantial duties of Any Occupation.

"Your Occupation" means the occupation or occupations, as performed in the national economy, rather than as performed for a specific employer or in a specific location, in which you are regularly engaged at the time you become disabled.

Case No.:



The "Your Occupation Period" is defined as the same as the Maximum Benefit Period for Total Disability, which in Dr. Zehtab's case is to age 65.

12.    Under the terms of the Overhead Expense Policy, Dr. Zehtab is entitled to a maximum monthly benefit of $10,000 for his Covered Overhead Expenses with a maximum aggregate benefit of $120,000.  The Policy contains an elimination period of 30 days, after which benefits become payable.

13.    Under the terms of LTD policy 06-338-0005106716, Dr. Zehtab is entitled to a total monthly benefit of $5,180.[2]  This policy contains an elimination period of 60 days, after which benefits become payable.  Given Dr. Zehtab's age at the time of the onset of his disability (he was 49), the maximum benefit period under this policy is for life, which based on the Social Security Life Expectancy table would be September 2048.

14.    Under the terms of LTD policy 66-338-5670361, Dr. Zehtab is entitled to a total monthly benefit of $1,200.  This policy contains an elimination period of 90 days, after which benefits become payable.  Given Dr. Zehtab's age at the time of the onset of his disability (he was 49), the maximum benefit period under this policy is to age 65, or to July 24, 2031.

15.    Under the terms of LTD policy 06-600-5386766, Dr. Zehtab is entitled to a total monthly benefit of $400.  This policy contains an elimination period of 90 days, after which benefits become payable.  Given Dr. Zehtab's age at the time of the onset of his disability (he was 49), the maximum benefit period under this policy is to age 65, or to July 24, 2031.

---

[2] This monthly benefit amount is based on an Increased Benefit Amendment dated March 1, 1996 and made a part of policy no. 06-338-0005106716, in which Dr. Zehtab's monthly benefit was increased from $3,500 to $5,180.

Case No.:



16.     Dr. Zehtab has met the Policies' definitions of Total Disability during all relevant periods because he suffers from bilateral wrist tenosynovitis, degenerative disc disease, facet joint syndrome, arthritis, arm pain and numbness in his fingers, all of which render him unable to perform the substantial and material duties of his occupation as a full-time dentist.

17.     In 1994, Dr. Zehtab purchased LTD policy 06-338-0005106716.  He had recently graduated from dental school and had begun working in a dental office in Oregon.  Dr. Zehtab purchased the policy to protect himself in the event that he became unable to work and could no longer financially support himself.  As discussed above, in 1997 he purchased his own dental practice in Oregon performing heavy dentistry including implants, extensive reconstruction, complicated root canals, Invisalign treatments, full-mouth extractions and crowns. Shortly after opening up his practice, he purchased an additional LTD policy (66-338-5670361) and an Overhead Expense policy (06-1737-5670482), to provide further financial protection for himself in the event that he became disabled.  In 2002, he purchased LTD policy 06-600-5386766 to ensure adequate financial coverage for himself and his growing family.  In August 2017, one year after selling his Oregon dental practice, Dr. Zehtab and his family moved to California where other members of his family are located.  Dr. Zehtab currently resides in Orange County, California.

18.     As clearly demonstrated from his medical records, Dr. Zehtab does not have the capacity to engage fully in his former occupation due to his severe back, neck, shoulder, wrist and arm pain, as well as stiffness and numbness in his extremities.  Dr. Zehtab's symptoms are severely aggravated by the awkward positioning involved in performing dental procedures, such as twisting his head, neck, back and wrists to work on a patient's teeth.  These dental procedures usually



require sitting in the same position for prolonged periods of time, which Dr. Zehtab can no longer do because of his pain.  When performing these dental procedures, he experiences significant pain in his wrists, arms and hands; he also suffers from sharp, stabbing pain in his neck and back, headaches, and numbness, pain and tingling in his arms and fingers.  His pain and fatigue increase throughout the day and he is never pain-free.  His symptoms prevent him from completing long, complicated procedures and short procedures.  Because of his medical condition, Dr. Zehtab is unable to perform the substantial and material duties necessary to engage in his former occupation as a dentist engaged in heavy dentistry in the usual and customary way and with reasonable continuity.

19.    Dr. Zehtab first began experiencing symptoms of wrist, neck, back and shoulder pain in 2013.  Over the next few years, his symptoms became progressively worse.  They worsened in large part due to his occupation as a full-time dentist engaged in heavy dentistry.  His job involved sitting for long periods of time (between one and four hours) and awkward positioning of his head, neck, back, arms, hands and wrists while performing complicated dental procedures.  By December 2015, his symptoms became so debilitating that he was unable to work a full-time schedule.  He began to significantly reduce his work hours in December 2015, but, unfortunately, this did not alleviate his symptoms.  By the spring of 2016, his condition had deteriorated to such an extent that he became unable to perform the substantial and material duties of his occupation, and he was forced to sell his dental practice.  He listed his dental practice for sale in the spring of 2016, and the practice was sold on July 10, 2016.

20.    After selling his practice, Dr. Zehtab took several months off work to rest, but because his family desperately needed his financial support, he was forced to find a part-time associate dentist position.  In August 2017, he began working



part-time, performing *light* dentistry only.  When Dr. Zehtab sold his practice,
he was initially hopeful that his condition would improve and that he would be able
to return to full-time dentistry.  However, after fifteen months, he realized that his
condition would not improve, would likely get worse, and that he could no longer
engage in full-time heavy or light dentistry.  In November 2017, Dr. Zehtab filed a
claim for benefits with Unum under his LTD and Overhead Expense policies.  He
described the nature of his disability as chronic cervicalgia, cervical spondylosis,
cervical and thoracic arthropathy and facet joint syndrome.  He listed his symptoms
as chronic, excruciating pain in his neck, back and arms and stated that he was
unable to perform the substantial and material duties as a dentist.  He also stated that
his condition was caused by 25 years of working on dental patients in repetitive,
leaning forward and awkward positions.

21.    In support of his claims, he submitted an Attending Physician
Statement ("APS") signed by J. Thomas Forsythe, M.D.  Dr. Forsythe listed Dr.
Zehtab's diagnoses as cervical degenerative arthritis and disc disease and facet joint
syndrome.  He stated that he had advised Dr. Zehtab to stop working effective July 1
2016.  He also stated that Dr. Zehtab's objective findings supporting his diagnoses
included a cervical MRI report from May 2016.  Dr. Forsythe indicated that Dr.
Zehtab was restricted and limited from sitting on one position for sustained periods
and sitting or standing with his neck in a flexed or twisted position and that these
limitations were permanent.  In regards to Dr. Zehtab's prognosis, Dr. Forsythe
stated that he did not expect improvement in Dr. Zehtab's functional abilities.

22.    In his application for benefits, Dr. Zehtab listed several treating
medical providers, including Dr. Forsythe (internal medicine), Robert Tatsumi,
M.D. (orthopedic surgery), Robert D. Heros, M.D. (physical medicine and
rehabilitation), Thomas A. Phipps, M.D. (neurology), Michael R. Van Allen, M.D.



(hand surgery), Michael P. Weinstein, M.D. (orthopedic surgery), Zach Knight-King, PAC, Lindsay Purtell, PAC and Shane Durando, PT.  Between 2013 and 2017, Dr. Zehtab regularly treated with these medical providers for his neck, back, wrist, shoulder, hand and arm pain.

23.     On May 28, 2016, Dr. Zehtab underwent an MRI of the cervical spine which revealed disc desiccation at the entire cervical spine and broad-based disc protrusions at C4-C5 and C6-C7.  At C4-C5 and C6-C7 levels, there was concurrent bilateral uncovertebral joint degenerative change causing narrowing of the bilateral neural foramen with deviation of the bilateral C5 and C7 exiting nerve roots.  The MRI also revealed straightening of the normal cervical lordosis with restricted range of motion in flexion and extension views.

24.     At an evaluation with Dr. Weinstein on June 13, 2016, Dr. Zehtab complained of neck pain ranging from a 9-10 on a 1 to 10 pain scale.  He also complained of numbness in his fingers.  Dr. Weinstein assessed Dr. Zehtab with cervical spondylosis and possible ulnar nerve neuropathy in his hands.

25.     On June 24, 2016, Dr. Zehtab was seen by neurologist Dr. Phipps and reported continued neck, wrist and back pain.  He also stated that he had developed tingling into the small fingers on both hands.  Dr. Zehtab reported that his symptoms continued to be very difficult for him, especially in the practice of dentistry, and that his condition had gotten to the point where he was not sure he could continue in his occupation.  Dr. Zehtab also stated that he did not wish to take medications which could impair him such as muscle relaxers.  Dr. Phipps noted tenderness at about T-7 in the midline as well as some scapular tenderness at the same level.  His cervical range of motion was essentially normal but associated with discomfort.  Dr. Phipps referred Dr. Zehtab for an MRI of the thoracic spine, which was completed on

Case No.:

1    November 7, 2016, and which revealed a loss of disc space height and type II

2    endplate changes at T10-T11 and minor degenerative disc changes within the

3    thoracic spine.

4

5        26.    On November 4, 2016, Dr. Zehtab was seen by Dr. Forsythe and

6    reported continued cervical pain and numbness and tingling in his fingers.

7

8        27.    On January 27, 2017, Dr. Zehtab was evaluated by Lindsay Purtell,

9    PA-C at Spinal Diagnostics for his chronic neck and mid-back pain.  Dr. Zehtab

10   reported bilateral neck pain that radiated into his shoulders, scapula and arms.  He

11   stated that he had begun cutting back his hours at work which drastically improved

12   the pain, but upon returning to work his symptoms would always return.  He stated

13   that his pain was at a 9-10 out of 10.  Ms. Purtell discussed the possibility of steroid

14   injections to address Dr. Zehtab's foraminal stenosis.  However, Dr. Zehtab did not

15   see injections as a long-term solution to his pain and, thus, declined to move forward

16   with injections.

17

18       28.    On February 8, 2017, Dr. Zehtab was evaluated by Zachary Knight

19   King, PA-C at Oregon Spine Care for pain in his neck, upper back and bilateral

20   upper extremities.  He complained of pain in his arms and numbness in his fingers.

21   He described his neck pain as aching, burning, stabbing, tingling, constant and

22   gradually worsening.  He rated his overall pain at an 8 out of 10 on a 1 to 10 pain

23   scale.  He also reported that his symptoms were worsened with movement and

24   physical activity and improved with rest.  Mr. King assessed Dr. Zehtab with

25   degeneration of cervical intervertebral disc and cervical radiculopathy.

26

27       29.    On May 24, 2018, Unum informed Dr. Zehtab that it was denying his

28   claims under his LTD and Overhead Expense policies.  Unum determined,

Case No.:



incorrectly, that Dr. Zehtab was able to perform the duties of his occupation and was, therefore, not disabled under the Policies.  Unum appeared to base its decision on the fact that Dr. Zehtab continued to work part-time in light dentistry.  Unum even refused to reconsider its claim denial when it was notified that Dr. Zehtab ceased performing all dental procedures because of his medical conditions.  Unum also based its decision on the opinions of two physician consultants who completed brief paper reviews of Dr. Zehtab's file.  Unum's consultants opined, without having ever spoken to Dr. Zehtab or to any of his treating physicians and in contradiction to the opinion of his physicians who had regularly examined Dr. Zehtab for several years, that Dr. Zehtab's medical information did not support restrictions or limitations.  Furthermore, Unum stated that it did not have any information to indicate that Dr. Zehtab's current work activities constituted a different occupation. With regard to the Overhead Expense claim, Unum stated that this claim had been closed (allegedly with Dr. Zehtab's consent) because Dr. Zehtab sold his practice prior to his claimed date of disability in the application form.

30.    On June 12, 2018, Dr. Zehtab was seen by his treating orthopedic surgeon, Dr. Weinstein, for a follow-up evaluation.  Dr. Weinstein noted that Dr. Zehtab was having problems working in his normal customary occupation, that he had had to modify his activities and procedures and that he was becoming very frustrated over time.  Dr. Weinstein stated that Dr. Zehtab had problems with his lower back and both wrists and that he had tenderness mostly on the dorsoradial aspect of the wrists.  In Dr. Weinstein's assessment, Dr. Zehtab was suffering from chronic lower-back pain, coccydynia and bilateral wrist tenosynovitis.

31.    On July 11, 2018, Dr. Zehtab was examined again by Dr. Weinstein. He continued to report chronic neck pain, chronic lower-back pain and bilateral wrist pain.  He reported to Dr. Weinstein that he had tried work modifications but he



1  continued to have ongoing pain with activities involving prolonged sitting and

2  leaning forward.  He indicated that he did not think he could perform capably as a

3  dentist.

4

5      32.     On November 27, 2018, Dr. Zehtab, through his counsel, submitted a

6  letter to Unum, enclosing additional evidence in support of his LTD and Overhead

7  Expense claims.  Specifically, Dr. Zehtab submitted a personal statement and a

8  certification letter from Dr. Weinstein.  Dr. Weinstein's letter explained that Dr.

9  Zehtab's diagnosed medical conditions included degenerative disc disease, facet

10  joint syndrome and arthritis and that these conditions contributed to his back, neck,

11  shoulder and wrist pain.  Dr. Weinstein also stated that these conditions and

12  symptoms prevented Dr. Zehtab from performing the substantial and material duties

13  of his occupation on a full-time basis.  The letter from Dr. Zehtab's counsel

14  explained that while Dr. Zehtab was able to perform light dentistry on a part-time

15  basis, he could not perform the full array of dental procedures required of his

16  occupation.  The letter further stated that he first became unable to work in full-time

17  clinical dentistry in December 2015.  At that time, as a result of his disabling

18  conditions, he began cutting back on his work hours and limiting his dental

19  procedures.  From December 2015 onward, he was unable to perform the substantial

20  and material duties of his occupation as a full-time clinical dentist.  As such, Dr.

21  Zehtab argued that his total disability began in December 2015, rather than July 1,

22  2016 as indicated in the Disability Claim Notice.  The letter explained that the

23  procedures he performed at his then current part-time job were very different than

24  the procedures he performed as a full-time clinical dentist and, therefore, he was not

25  currently working in his own occupation and was thus eligible for benefits under the

26  Policies.

27

28

Case No.:

33.     In Dr. Zehtab's personal statement included with the November 27, 2018 letter, he stated that, after about 15 to 20 minutes of doing complicated dental procedures, he would experience pain in his middle back that radiated to his neck, head and the right side of his body.  The pain would shoot down his arms with tingling and burning in his arms and fingers and numbness in his fingers.  He also felt wrist pain whenever he held and maneuvered dental instruments, something he had to do for almost all of the procedures he performed.  He stated that he could not do complicated dental procedures, such as full mouth extractions and extensive crowns, any longer because of his debilitating pain.

34.     In Dr. Weinstein's certification letter, dated September 6, 2018, he stated that, based on his examinations of and discussions with Dr. Zehtab and a review of his medical records, he strongly believed that Dr. Zehtab was disabled and unable to perform the tasks necessary for full-time dentistry.  He noted that the procedures and positioning involved in Dr. Zehtab's occupation caused the pain in his wrists, neck and back to gradually worsen.  Dr. Weinstein stated that Dr. Zehtab experienced tingling and numbness in his little finger and down his arm and that his wrist pain intensified as his workday continued.  Dr. Weinstein noted that Dr. Zehtab's X rays and MRIs revealed degenerative changes to his spine as well as significant disc bulges and loss of lordosis.  He reiterated Dr. Zehtab's diagnoses of degenerative disc disease, facet joint syndrome and arthritis, which all contributed to his back, neck, shoulder and wrist pain.  Dr. Weinstein concluded his letter by stating:

> **Based on my examinations of Dr. Zehtab I can state that, without reservation, that he does not have the functional capacity to perform the full array of dental procedures on a fulltime basis . . . Dr. Zehtab was and continues to be unable to return to his previous occupation as a fulltime dentist because his pain prevents him from performing the full, necessary duties of his occupation**.

Case No.:

35.     The November 27, 2018 letter also included financial and occupational records that Unum had previously requested, including business and personal tax returns, W-2 forms and profit-and-loss records related to Dr. Zehtab's dental practice.  In the letter, Dr. Zehtab requested that Unum re-evaluate his claims and overturn its erroneous decision, in light of the overwhelming evidence supporting his total disability under the Policies.

36.     In January 2019, Dr. Weinstein referred Dr. Zehtab to physical therapy for his bilateral wrist pain, neck pain and back pain.  Dr. Zehtab began physical therapy at North Orange Physical Therapy in Irvine, California on January 11, 2019.  His diagnoses included bilateral wrist tenosynovitis, neck and back pain and coccydynia.  At the initial physical therapy evaluation, Dr. Zehtab reported neck and back pain ranging from 6 to 8 out of 10 on a 1-to-10 pain intensity scale, and that this pain increased with activities and prolonged mobility and interfered with his activities of daily living.  He also reported wrist pain ranging from 4 to 6 out of 10, which was increased by active range of motion and which interfered with his grip and use of his hands and wrists.  His physical therapist's plan of care included ultrasound, therapeutic exercise, electrical stimulation and manual therapy.  Dr. Zehtab was advised to attend physical therapy sessions two to three times per week for four to six weeks to treat his bilateral wrist tenosynovitis, neck and back pain and coccydynia.  He completed the treatment plan as recommended.

37.     On April 9, 2019, Dr. Weinstein wrote a second certification letter in support of Dr. Zehtab's disability claim.  He stated that Dr. Zehtab's symptoms had increased and that he had decreased range of motion in his neck and low back.  He stated that Dr. Zehtab was currently working only three days per week due to his pain and discomfort.  Dr. Weinstein reiterated his prior opinion that Dr. Zehtab does not have the functional capacity to perform the full array of dental procedures on a

Case No.:



full-time basis.  His opinion was based on his numerous in-person examinations of Dr. Zehtab.

38.     Despite receiving sufficient information and documents to support Dr. Zehtab's claims, over the next five months Unum continued to repeatedly request additional evidence from Dr. Zehtab, which it falsely claimed was necessary to properly evaluate his eligibility for benefits.  By letters dated December 28, 2018, February 15, February 19, March 13 and April 12, 2019, Unum requested further financial and occupational records from both Dr. Zehtab and his dental business that were either not relevant to the claims, duplicative or could have been requested long ago, including various tax returns, 1099s, verification of business expenses and records of monthly earnings.  Dr. Zehtab complied to the best of his ability with each request for documents.  On April 26, 2019, Dr. Zehtab, through counsel, sent Unum a letter advising it that he had provided all financial records in his possession that were relevant to his claims and that Unum should now have all the information it needed to reconsider its denial.  The letter reminded Unum that it was in violation of California's Fair Claims Settlement Practices Regulations by improperly and unreasonably delaying making a decision and by constantly demanding documents and evidence that were either not pertinent or necessary for the determination of Dr. Zehtab's claim or that could have been requested long ago.  The letter requested that Unum cease further delay and reverse its incorrect denial decision.

39.     On June 19, 2019, Dr. Zehtab, through counsel, informed Unum that Dr. Zehtab's work schedule had been reduced to two days per week due to his medical condition and inability to perform the full array of dental procedures on a full-time basis and that this was further evidence that Dr. Zehtab was totally disabled and could not perform the substantial and material duties of his occupation. This letter enclosed another letter from Dr. Zehtab's employer, Dr. Masi

Case No.:



Hashemian, dated June 11, 2019 wherein she confirmed that Dr. Zehtab's work schedule had been reduced to two days per week due to his medical condition and inability to perform the full array of dental procedures on a full-time basis.  She stated:

> As I stated in my previous letter, due to his medical condition, Dr. Zehtab is unable to perform the full array of dental procedures such as complicated molar root canals, full mouth extractions and extensive restorative work such as crown preparations.
>
> Unfortunately, at this time we can visually see Dr. Zehtab is in pain and discomfort especially during long procedures. This has forced us to cut his days to two days per week only for light dentistry and to hire another general doctor to replace him in the other two days.
>
> Despite this part time working schedule that causes major financial burden on Dr. Zehtab, we are hoping with giving his body more number of days to rest we could continue to have him in our office to take care of our patients. We will continue to keep his two days available to him for as long as he can physically deliver care without further compromising his own health!

40.     On June 28, 2019, Unum sent a letter to Dr. Zehtab informing him that it was maintaining its position that he was not disabled according to the Policies and that benefits were not payable.  Unum stated, contrary to the evidence in the claim file, that the medical and occupational information received was not consistent with an illness that would preclude Dr. Zehtab from performing his job duties.  Unum based its decision, in part, on the opinion of its physician reviewer who concluded, without examining or speaking with Dr. Zehtab, that restrictions and limitations were not medically supported.  In addition, Unum claimed that a review by its vocational consultant demonstrated that Dr. Zehtab continued to perform the procedures and services typical of a general dentist.  Unum stated that Dr. Zehtab's

Case No.:



1   file would be referred to its Appeal Unit for further review.  With regard to the

2   Overhead Expense policy, Unum reiterated its prior position that benefits were not

3   payable because Dr. Zehtab sold his dental practice prior to his date of disability.

4   According to Unum, because Dr. Zehtab was originally claiming a disability date of

5   July 1, 2016 and because he had sold his practice in June 2016 (it was actually sold

6   in July 2016), he was not eligible for benefits under the Overhead Expense policy.

7   Furthermore, although Unum acknowledged that Dr. Zehtab was now claiming a

8   disability date of December 1, 2015, it wrongly determined that he was not disabled

9   prior to July 2016 and, thus, was not entitled to benefits.  Unum's decision to deny

10  benefits under the Overhead Expense policy was incorrect and in bad faith.  Dr.

11  Zehtab, through counsel, advised Unum, by letter dated November 27, 2018, that his

12  total disability began in December 2015 and, as such, he was eligible for seven

13  months of Overhead Expense benefits.  In addition, Unum's conclusion that Dr.

14  Zehtab was not disabled prior to July 2016 completely ignored the vast majority of

15  medical evidence supporting his disability claim as discussed herein, including his

16  treating physicians' medical reports, MRI report and his subjective complaints of

17  severe pain.

18

19       41.   On July 29, 2019, Dr. Zehtab's counsel sent Unum a letter from Dr.

20  Weinstein, dated July 9, 2019, that clarified Dr. Weinstein's opinion regarding Dr.

21  Zehtab's medical condition and that addressed a recent telephone call between Dr.

22  Weinstein and Unum's physician consultant.  According to Unum's physician

23  consultant, Dr. Weinstein had agreed that Dr. Zehtab's examination findings and test

24  results did not indicate restrictions and limitations.  Dr. Weinstein's July 9 letter

25  reiterated his opinion that Dr. Zehtab had degenerative changes in his neck that

26  caused ongoing symptoms and that he believed that Dr. Zehtab would have

27  difficulty working in a full-time position as a dentist due to his condition.  Dr.

28



Weinstein also clarified that he had explained to Unum's physician consultant that it was Dr. Zehtab's pain that was restricting and limiting him.

> As he has gotten older and his degenerative changes have become more symptomatic, he has limited ability because of ongoing neck and wrist pain. He has difficulty working full time and doing prolonged procedures. He can work in a modified position where he can get up and move around, and do shorter procedures. He cannot do the long procedures that a dentist is required to support himself in a successful dentist practice. He has to modify the length of his procedures, the position, and he has to get up and move around. These modifications are based on the degenerative changes in his neck and wrist.

> This opinion fully supported Dr. Zehtab's disability claim.

42.   By letter dated August 15, 2019, Dr. Zehtab, through his counsel, informed Unum that:

> [D]ue to his disabling medical condition and inability to perform any of the material duties of his occupation, Dr. Zehtab was forced to stop working altogether and is no longer receiving any income. This information strongly supports Dr. Zehtab's claim for total disability.

> We request that Unum consider this information as part of the appeal review of Dr. Zehtab's claim.

43.   By letter dated August 30, 2019, Unum informed Dr. Zehtab that it was upholding the denial of his claims.  Unum again erroneously determined that the medical evidence did not support restrictions and limitations as of December 1, 2015 forward.  Unum based its decision on yet another paper review of Dr. Zehtab's claim file conducted by its physician reviewer who is board-certified in *family* practice and, therefore, not nearly as qualified as Dr. Zehtab's treating orthopedic doctor to render credible opinions regarding Dr. Zehtab's medical condition.  In its



letter, Unum acknowledged Dr. Zehtab's reports of pain, but in defiance of the all of the available evidence, unreasonably and maliciously denied the claim stating it had determined that his condition did not rise to a level of impairment.  In support of its position, Unum pointed out that Dr. Zehtab was not a surgical candidate, he reported that he exercised regularly, he was working four days per week, he received limited analgesic treatments and he declined therapeutic injections.  According to Unum, these factors were inconsistent with Dr. Zehtab's reports of severe and debilitating pain.

44.     First, none of these factors demonstrate that Dr. Zehtab is capable of performing his job functions as a dentist in the usual and customary manner and with reasonable continuity.  Second, these factors are entirely consistent with Dr. Zehtab's reports of severe pain.  The fact that he is not a surgical candidate does not mean that his pain is not disabling.  Unum is attempting to impose a ridiculously high standard for disability: that a condition must be so severe that it needs to be corrected surgically in order to be disabling.  With regard to exercising, Dr. Zehtab's physical therapist had advised him to exercise regularly to alleviate his symptoms and he was, thus, following his therapist's recommendations.  With regard to working four days per week, as discussed herein, Dr. Zehtab was working in a very limited capacity and always with significant pain, as demonstrated by his personal statement, certification letters from Dr. Weinstein and letter from his former employer, Dr. Masi Hashemian.  Moreover, Dr. Zehtab recently stopped working in general dentistry altogether due to his impairing conditions and is now working only two days per week performing primarily managerial duties for a dental office and performing occasional dental exams.  In regards to Unum's comments that Dr. Zehtab is receiving limited treatment and has declined injections, as documented in his medical records, Dr. Zehtab does not believe that injections are a long-term solution for his pain and, thus, has opted for conservative treatment.  Further,



1    because Dr. Zehtab was working part-time, he could not take strong medications

2    that could impair his ability to function at work.  None of these factors are

3    inconsistent with reports of severe and debilitating pain.

4

5        45.    Unum's position that Dr. Zehtab is not totally disabled under the

6    Policies is incorrect.  Not only did Unum fail to adequately explain how or why it

7    reached its decision, but it also failed to apply the proper standard of disability to

8    Dr. Zehtab's claims.  Under California law, "total disability" means that the insured

9    must be unable to perform the substantial and material acts necessary to the

10   prosecution of a business or occupation in the usual or customary way and with

11   reasonable continuity.  The evidence in Dr. Zehtab's claim file indisputably

12   established that he could not perform the substantial and material duties of his

13   occupation in the usual and customary way.  Although he at one point in time he

14   continued to perform light dentistry, he could no longer complete the lengthy

15   complicated dental procedures that formed the bulk of his prior practice and, as a

16   result, he could not perform the substantial and material duties of his occupation.

17   Now that he cannot and does not perform even light dentistry, he is totally disabled.

18   As explained herein and as evidenced in the claim file, Dr. Zehtab cannot perform

19   the array of dental procedures required of his occupation on a full-time or part-time

20   basis due to his medical condition.  This establishes that he cannot perform the

21   duties of his job in the usual and customary way and with reasonable continuity,

22   which is required in order to meet the definition of "total disability" under

23   California law.  This also establishes that Unum's claim determination was

24   incorrect.

25

26       46.    In addition, insofar as Unum reviewed Dr. Zehtab's LTD claims under

27   the residual disability provisions of the Policies due to his previous part-time work,

28   it applied an incorrect disability standard to Dr. Zehtab's claims.  Under the LTD

policies, an insured is totally disabled if he is unable to perform the substantial and material duties of his occupation.  Even when Dr. Zehtab was working part-time performing light dentistry, he met this definition because, although he was working, he was not working in his usual occupation and he was unable (and remains unable) to perform the substantial and material duties of his occupation.  As discussed herein, the procedures that he performed in his part-time work were vastly different than the procedures he previously performed.  He was and is unable to complete complicated root canals, implants, full-mouth extractions and other lengthy procedures that he previously performed.  He was limited to simple, one-hour procedures.  The nature of his dental practice drastically changed such that he was no longer working in his prior occupation and, therefore, his claim should have been evaluated under the Total Disability provision of the Policies.  Dr. Zehtab, through counsel, repeatedly advised Unum that he was not residually disabled, but rather was totally disabled under the LTD policies, based on the medical and other evidence.  Unum's failure to evaluate Dr. Zehtab's claim under the proper disability standard evidences its bad-faith claims-handling conduct.

47.     Dr. Zehtab is physically unable to work in his occupation because of his serious medical condition.  He has severe pain in his wrists, arms, neck, back and shoulders that is exacerbated by the awkward positioning involved in performing dental procedures.  He also suffers from stiffness and numbness in his arms, numbness and tingling in his fingers, and fatigue.  He is tired and distracted most of the day due to the pain and has often had to reschedule appointments, break up procedures into two appointments or forgo certain procedures altogether.  This prevents him from performing the substantial and material duties of his occupation as a full-time dentist in the usual and customary way and with reasonable continuity.

Case No.:

48.    Given the overwhelming medical and occupational evidence supporting Dr. Zehtab's disability diagnosis under the Policies, Unum's denial of benefits was and is unreasonable, without proper cause and malicious.  Unum engaged in a biased and self-serving interpretation of the Policies' terms and unreasonably delayed reviewing Dr. Zehtab's claim by repeatedly requesting documents from Dr. Zehtab that were either not necessary to a claim determination or that could have been requested long ago.  Courts have held that an unreasonable delay in reviewing a claim and making a claim decision gives rise to bad faith liability.  *See Brehm v. 21st Century Ins. Co*., 166 Cal. App. 4th 1225, 1237 (2008) ("A delay in payment of benefits due under an insurance policy gives rise to tort liability only if the insured can establish the delay was unreasonable."); *see also Wilson v. 21st Century Insurance Co*., 42 Cal. App. 4th 713 (2007); *McCormick v. Sentinel Life Insurance*, 153 Cal. App. 3d 1030 (1984).

49.    Moreover, Unum ignored the ample medical evidence contained in Dr. Zehtab's claim file that establishes that he is totally disabled within the meaning of the Policies.  Instead of accepting the medical opinion of the qualified orthopedic surgeon who personally examined Dr. Zehtab over an extended period of time and was, therefore, far better suited to render credible opinions, Unum chose to deny Dr. Zehtab's claims based on deficient paper reviews of his medical records.  Neither Unum nor its paid consultants made any attempts to distinguish or evaluate the contrary opinions of Dr. Zehtab's treating physicians, Dr. Weinstein and Dr. Forsythe, that Dr. Zehtab was totally disabled.  In addition, Unum failed to give proper weight to Dr. Zehtab's consistent reports of pain.  That is strong evidence that Unum acted unreasonably under the circumstances and thus acted in bad faith.

50.    Here, the weight of the evidence that existed when Unum denied the claims (the treating orthopedic surgeon's opinion based on his years of in-person

-23-



exams, medical records documenting severe neck, back, arm and wrist pain and Dr. Zehtab's statements that his pain interferes with his job duties) was that Dr. Zehtab was totally disabled due to his diagnoses of degenerative disc disease, facet joint syndrome, arthritis and bilateral wrist tenosynovitis.  Unum's reliance on its deficient paper-review reports, its improper delay in evaluating Dr. Zehtab's claim and its failure to engage in a thorough investigation of the claim amounts to bad faith.  Unum also failed to apply the proper standard of disability to Dr. Zehtab's disability claims.  Dr. Zehtab is totally disabled under California law because he is unable to perform the substantial and material acts necessary to the prosecution of his occupation *in the usual or customary way and with reasonable continuity*. Unum neglected to recognize that, although Dr. Zehtab can perform short, simple dental procedures on a part-time basis, he cannot perform all of the essential functions of dentistry in the usual or customary manner and with reasonable continuity and, as such, he is totally disabled from his occupation.

51.     Dr. Zehtab is now, and at all times relevant remained, "Totally Disabled" as defined in the Policies, and has now and at all times relevant convincingly demonstrated his total disability through medical records and other documents, information and correspondence.  Even Standard Insurance Company, who investigated Dr. Zehtab's disability claim under its disability insurance policy determined that Dr. Zehtab was totally disabled and paid him disability benefits.

52.     Accordingly, a dispute exists between Dr. Zehtab and Unum regarding his entitlement to LTD and Overhead Expense benefits from December 1, 2015 forward.

Case No.:



## **FIRST CLAIM FOR RELIEF**

For Breach of Contract

(Dr. Zehtab Against Unum and Provident and Does 1 to 10)

53.     Dr. Zehtab incorporates by reference each and every allegation set forth in each of the foregoing paragraphs, as though fully set forth herein.

54.     Dr. Zehtab and Unum entered into a valid and binding written contract, i.e., the Policies, by virtue of Dr. Zehtab having been an insured under the Policies issued by Unum to Dr. Zehtab.  The Policies obligated Unum to, among other things, pay Dr. Zehtab disability benefits and Overhead Expense benefits should he become totally disabled within the meaning of the Policies.

55.     At all times relevant, Dr. Zehtab has been, and continues to be, totally disabled within the meaning of the Policies.

56.     Unum improperly, unreasonably, incorrectly and with willful disregard denied Dr. Zehtab's claims for benefits that were and are due and owing to him under the Policies.

57.     Dr. Zehtab fulfilled every condition and has duly performed each and every obligation he was required to perform under the terms of the Policies, and therefore is, and at all times relevant has been, entitled to payment of benefits under the terms and conditions of the Policies.

58.     Unum breached its obligations to Dr. Zehtab by failing to fulfill its obligations under the Policies, including but not limited to the obligation to pay him disability benefits, ignoring the ample medical and occupational evidence in support



of his disability claims and neglecting its obligation to conduct a thorough claims examination.

59.     As a direct and proximate result of Unum's conduct as alleged herein, Dr. Zehtab has suffered and will continue to suffer monetary and non-monetary damages, in an amount to be determined at trial, but which exceeds $75,000, including but not limited to loss of his disability insurance benefits and pre-judgment interest on those benefits.

## SECOND CLAIM FOR RELIEF

For Breach of the Implied Covenant of Good Faith and Fair Dealing

(Dr. Zehtab Against Unum and Provident and Does 1 to 10)

60.     Dr. Zehtab incorporates by reference each and every allegation set forth in each of the foregoing paragraphs, as though fully set forth herein.

61.     Unum's denial of Dr. Zehtab's claims for payment of LTD and Overhead Expense benefits was unreasonable and without proper cause.

62.     No reasonable dispute exists that Dr. Zehtab's medical condition, including degenerative disc disease, facet joint syndrome, arthritis and bilateral wrist tenosynovitis, prevents him from returning to work in his usual occupation. However, rather than reviewing his medical and occupational records and reaching the proper conclusion that Dr. Zehtab cannot perform the substantial and material duties of his own occupation, Unum decided to deny his claims for LTD and Overhead Expense benefits without proper cause and in bad faith.





Case No.:

63.     Each and every agreement in California, including the Policies, contains an implied covenant of good faith and fair dealing.  *See Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809 (1979).  That covenant required Unum to, among other things: refrain from acting in any way that could unreasonably jeopardize, impair or interfere with the rights of Dr. Zehtab to receive the benefits of the contract, including his disability benefits; properly investigate the claim; not withhold or delay paying Policy benefits unreasonably or without proper cause; act reasonably in handling, processing and paying the claim while considering the totality of the circumstances; and give at least as much consideration to the insured's interests as it does to its own.  Unum violated this covenant when it improperly and unreasonably denied Dr. Zehtab's claims for benefits.

64.     Unum violated and breached this implied covenant and breached its duty of good faith and fair dealing owed to Dr. Zehtab by the following, among other, conduct:

(a)     Unreasonable and bad-faith failure to approve and pay Dr. Zehtab the benefits he was due under the Policies.  Unum paid him nothing and unreasonably denied the claims in full.

(b)     Unreasonable and bad-faith delay in making a claims decision.

(c)     Unreasonable and bad-faith requests for information from Dr. Zehtab that had been previously sought and obtained from him, requests for information that were irrelevant/immaterial to the claim and requests for information which could and should have been requested long before they were finally requested by Unum, thus contributing to the unreasonable delay in handling the claims.

(d)     Unreasonable and bad faith failure to investigate Dr. Zehtab's entitlement to payment of the submitted claims.  A claim investigation must thoroughly investigate all the possible bases that might support an insured's claim, and a trier of fact may find that an insurer acted unreasonably if it ignored evidence available which supports the claim.  *Wilson v. 21st Century Ins. Co.,* 42 Cal. 4th

-27-



713, 721 (2007); *Shade Foods, Inc. v. Innovative Prod. Sales & Mktg., Inc.,* 78 Cal. App. 4th 847, 879-80 (2000) (the adequacy of insurer's investigation is one of the most critical factors in determining whether an insurer acted in good faith).

(e)  Failing to conduct a thorough investigation and thus breaching the implied covenant (*see Guebara v. Allstate Ins. Co.*, 237 F. 3d 987, 996 (9th Cir. 2001)), as evidenced by the above-described conduct and also because it: (1) failed to interview necessary witnesses, *see Downey Sav. & Loan Ass'n v. Ohio Cas. Ins. Co.*, 189 Cal. App. 3d 1072, 1084 (1987); (2) failed to consult with medical experts as was appropriate in this case, instead unreasonably opting to rely on purely "paper reviewing" medical consultants, *see Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 724 (2007) and *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1624-1625 (1996) (failure to consult with insurer's own doctor or treating physician); and (3) failed to investigate beyond facts and coverage theories asserted by the insured, *see Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1072 (2007) (insurer must "fully inquire into possible bases that might support the insured's claim"), among other things;

(f)  Engaging in inadequate communication with Dr. Zehtab regarding what information was needed to support the claims.  *See Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 278 (1984);

(g)  Conducting a biased claims examination, using biased claims examiners, supervisors and medical reviewers, all of whom conducted a cursory examination of the medical documents and failed to inquire as the why the medical file contained so few documents.  *See Barbour v. UNUM Life Ins. Co.*, 2011 U.S. Dist. LEXIS 91060 (S.D. Cal. 2011) (relying on in-house experts' analysis and failing to view the evidence in the light most favorable to the insured determined to be potentially unreasonable claims handling and cannot create a "genuine dispute" as to coverage sufficient to absolve insurer of bad faith liability);

(h)  Failing to conduct an independent medical examination of Dr. Zehtab, opting instead to rely solely on inadequate, unqualified and biased in-house medical professionals who never spoke with him or to his treating doctors.  Unum's conduct evidences completely biased, unreasonable, bad-faith and improper claims handling.  *See Phillips v. Clark County School District*, 2012 U.S. Dist. LEXIS

-28-



141633, 2012 WL 4604466 (D. Nev. Sept. 30, 2012) (An insurance provider's act in conducting a "pure paper" review, rather than an independent medical examination, constitutes "an indicator of bias.").

(i)   Failing to consider and apply the proper standard of disability under California law and ignoring the credible objective and subjective evidence of Dr. Zehtab's disability that rendered him unable to perform the substantial and material acts necessary for the prosecution of his business or occupation in the usual or customary way and with reasonable continuity. *See Hangarter, supra*, 373 F.3d at 1006.

(j)   Failing to reconsider its decision when it was presented with proof of disability and information that Dr. Zehtab reduced his workload/days in the office and then ceased work altogether.

(k)   Violating many provisions of the Unfair Claims Settlement Practices Act, *see* California Insurance Code section 790.03(h), and the corresponding California Fair Claims Settlement Practices regulations, *see* 10 Cal. Code Regs., section 2695.1 et seq., which is further evidence that it breached the implied covenant. *See Jordan*, 148 Cal. App. 4th at 1078 ("This is a *proper* use of evidence of an insurer's violations of the statute and the corresponding regulations.") (italics in original); and

(l)   Unreasonable and bad faith failure to give Dr. Zehtab at least as much consideration to his interests as it did to its own interests. *See Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979).

65.   Unum's malicious and unreasonable conduct caused Dr. Zehtab to suffer emotional and financial distress.  He could not work full time to help support himself, and the improper denial of the Policies' benefits placed a great financial burden on him.  Dr. Zehtab purchased the Policies precisely in case he became disabled so as to provide him the necessary financial assistance he needed.  Yet Unum unreasonably denied his claims in order to protect its own financial interests at the expense of Dr. Zehtab's interests when he needed the Policies' benefits to support himself and his family, causing him worry, anxiety, mental anguish and serious emotional suffering and distress.



66.     By refusing to provide Dr. Zehtab the benefits to which he is entitled, and to which he relies on to live, Unum has also caused Dr. Zehtab to suffer financial damages.

67.     As a proximate result of Unum's unreasonable claims handling and decision to deny Dr. Zehtab's claims for disability benefits, he had to retain lawyers to represent him.  He has incurred attorneys' fees and costs, and will continue to do so, to file this litigation and otherwise pursue the disability benefits he is entitled to receive from Unum under the Policies, but which it has unreasonably refused to provide.

68.     Unum's conduct, as alleged above, was undertaken with a malicious intent of depriving Dr. Zehtab of his legal right to disability insurance benefits due under the Policies and otherwise causing him injury.  The acts were despicable, malicious, oppressive and/or fraudulent and subjected Dr. Zehtab to a cruel and unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages in an amount to be proven at trial.

69.     Unum's officers, directors and/or managing agents were either personally involved in the reprehensible conduct warranting punitive damages, and/or they authorized or ratified the conduct of its employees.

70.     As a direct and proximate result of Unum's conduct as alleged herein, Dr. Zehtab has suffered and will continue to suffer monetary and non-monetary damages, in an amount to be determined at trial, but which exceed $75,000, including but not limited to, loss of his disability insurance benefits and Overhead Expense benefits, pre-judgment interest on those benefits at the legal rate, consequential damages, emotional distress damages and attorneys' fees, costs and

Case No.:



1  expenses incurred pursuing the Policies' benefits under *Brandt v. Superior Court*, 37
2  Cal. 3d 813 (1985) and its progeny.

3

4                                   **<u>PRAYER</u>**

5

6  WHEREFORE, Dr. Zehtab prays for judgment as follows:

7        1.  For past due and future benefits due under the Policies;

8        2.  For compensatory and consequential damages;

9        3.  For emotional distress damages;

10       4.  For punitive damages;

11       5.  For pre-judgment and post-judgment interest;

12       6.  For attorneys' fees and costs of suit; and

13       7.  For such other and further relief as the Court deems just and proper.

14

15   Dated:  October 3, 2019                  MᴄKENNON LAW GROUP

16

17                                   By: _____

18                                       ROBERT J. MᴄKENNON
                                         ANDREA SOLIZ
19                                       Attorneys for Plaintiff Hamid Zehtab

20

21

22

23

24

25

26

27

28



Case No.:

1

## <u>REQUEST FOR JURY TRIAL</u>

2

3        Plaintiff requests a trial by jury.

4

5    Dated:  October 3, 2019                    McKENNON LAW GROUP

6

7                                    By: _____
                                          ROBERT J. McKENNON
8                                         ANDREA SOLIZ
                                          Attorneys for Plaintiff Hamid Zehtab

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-32-                                                            Case No.:

